## Commonwealth to use Sharon School District *v.* J. W. Stambaugh et al., Appellants.

*Tax collector — Filing of bond—Liability of surety — Warrant and tax duplicate—Public officers—Acts of April* 15, 1834, *and June* 25, 1885.

Under the act of June 25, 1885, P. L. 187, which provides that the court shall declare the office of tax collector vacant if the collector fails to file his bond before the fourth day of the term of the court of quarter sessions next ensuing his election, the sureties on the collector's bond, filed after the fourth day, cannot allege that the collector was not regularly qualified. Under the act the office is not vacant until the court declares it to be so.

Under the act of June 25, 1885, P. L. 187, the sureties on a tax collector's bond are liable for school taxes collected by him, although the

school directors did not deliver to the collector their warrant with the tax duplicate of the year.

Such a collector, when lawfully possessed of the duplicate for collection, would, without a warrant, have authority to demand, receive and receipt for the taxes embraced in the duplicate, although he could not enforce his demand by seizure of property or person. What he would so receive, he would receive by virtue of his office, and it would be covered by his bond.

A tax collector who has received a duplicate for school taxes under the act of June 25, 1885, P. L. 187, is liable for the whole amount of the duplicate remaining unpaid and unexonerated after three months from the time the collector receives the corrected duplicate, as provided by the act of April 15, 1834, § 29, P. L. 518.

*Appropriation of payments.*

Where a tax collector expressly appropriates payments to the duplicate of one year by checks drawn on his general fund, and it is impossible to ascertain whether the money so paid was collected in that or the following year, the sureties on the collector's bond for the following year are not entitled to have any of the payments credited to the duplicate of the year for which they are liable.

Argued Oct. 9, 1894. Appeal, No. 68, Oct. T., 1894, by defendants, from judgment of C. P. Mercer Co., Sept. T., 1893, No. 58, on special verdict. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on tax collector's bond.

The jury found, by special verdict:

"That James W. Stambaugh was duly elected collector of taxes for the borough of Sharon, at the February election of 1888, for the ensuing year; that he did not give bond or qualify by taking the oath of office before the fourth day of the next term of the court of quarter sessions, ensuing after the date of his election, which term of court occurred beginning the first Monday of March, 1888; but that on Aug. 28, 1888, his bond with sureties was presented to and approved by the president judge of the said court, which bond is as follows:

"'KNOW ALL MEN BY THESE PRESENTS, that we, J. W. Stambaugh,            are held and firmly bound unto the Commonwealth of Pennsylvania in the sum of sixty thousand dollars, lawful money of the United States of America, to be paid to its certain attorney, to which payment well and truly to be

made we do bind ourselves, our heirs, executors and adminis-
trators, firmly by these presents, sealed with our seals and dated
the      day of                1888.

"'WHEREAS, the above bounden J. W. Stambaugh has been
duly elected and returned to the court of quarter sessions of
the peace of the county of Mercer, as collector of taxes of the
borough of Sharon in the said county for the ensuing year,
which election has been approved and confirmed by the said
court:

"'Now the condition of this obligation is such, that if the said
J. W. Stambaugh shall and do well and truly collect and pay
over or account for according to law, the whole amount of taxes
charged and assessed in the duplicates which shall be delivered
to him, and faithfully discharge the duties appertaining to the
office of collector of taxes according to law, then this obliga-
tion to be void: otherwise to be and remain in full force and
virtue.' [Here follow names and seals of principal and sure-
ties, defendants.]

"And on the same day said J. W. Stambaugh took the oath
of office appended to said bond as follows:

"'MERCER COUNTY, SS.

"'I, J. W. Stambaugh, having been duly elected collector of
taxes in the borough of Sharon, do      that I will support
the Constitution of the United States and the Constitution of
the Commonwealth of Pennsylvania, and that I will well and
truly collect and pay over, or account for according to law, the
whole amount of taxes charged and assessed in the duplicates
which shall be delivered to me, and faithfully discharge the
duties of said office according to law and the best of my judg-
ment and ability.' [Here follows jurat.]

"On the same day, to wit, on Aug. 28, 1888, the school board
of the school district of the borough of Sharon delivered to J.
W. Stambaugh the school duplicate for the year 1888, showing
taxes assessed as therein stated to the amount of $14,121.38;
to which duplicate no warrant was attached, nor did any war-
rant accompany the same nor was any warrant thereafter de-
livered to J. W. Stambaugh.   J. W. Stambaugh did not ask
for any warrant at that time nor thereafter; and had he asked'
for such warrant, the school board had no disposition to refuse
the same; the failure to receive or give the same was an over

sight upon the part of the parties, i. e., of the school board and of the collector, J. W. Stambaugh.

" We do further find that said J. W. Stambaugh is entitled to credits on said duplicate to the amount of $12,159.96, consisting of the following items, to wit:

|  |  |
|---|---|
| Cash payments to the amount of . . | $8,362.33 |
| Commissions (and deductions) on $6,865.06, at the rate of seven per cent, amounting to . | 480.55 |
| Commissions on $2, 838.32 at the rate of five per cent, amounting to . . . . . | 141.92 |
| To exonerations to the amount of . . . | 544.53 |
| To taxes improperly assessed . . . | 175.00 |
| To taxes still uncollected on said duplicate, and now exonerated, amounting to . . . | 125 29 |
| To amount of overpayment made on school taxes on duplicate of 1887 . . . . | 1,197.41 |
| And to amount of a borough order, dated June 28, 1892, and given to the school board on July 1, 1892, for . . . . . . . | 1,132.33 |
| Which shows a balance due on the said duplicate of . . . . . . . | 1,961.42 |

" We do further find that the taxes actually collected by the said J. W. Stambaugh on the said duplicate, were as follows :

|  |  |
|---|---|
| Prior to Oct. 28, 1888, the sum of . . | $6,865.06 |
| Between that date, and prior to Feb. 28, 1889, the sum of . . . . . . . | 2,838.32 |
| After Feb. 28, and prior to the expiration of his term of office, about April 7, 1889, . . | 147.34 |
| And since April 7, 1889, the sum of . . | 3,425.24 |
| Making a total of . . . . . | $13,275.96 |

Wherefore the said balance of $1,961.42 is in the hands of said J. W. Stambaugh.

" We do further find that since the date when said duplicate went into the hands of said J. W. Stambaugh, the following sums have been paid by him to the school board on said duplicate, and other duplicates in his hands, to wit :

|  |  |
|---|---|
| On Sept. 8, 1888, there was paid on the duplicate of 1888, the sum of . . . . | $162.33 |
| On Dec. 5, 1888, he paid on the school duplicate of 1887, the sum of . . . . | 1,000.00 |

On the same date he paid on the school dupli-
cate for the year 1888 the sum of    .    .    5,000.00

On March 14, 1889, he paid on the school du-
plicate for 1887, the sum of    .    .    .    2,000.00

On March 14, 1889, he paid on the school du-
plicate for the year 1888, the sum of .    .    2,000.00

On June 1, 1889, he paid on the school dupli-
cate for 1887, the sum of    .    .  .    .        .57

On Nov. 9, 1889, he paid on the school dupli-
cate for 1888 the sum of    .    .    .    .    1,000.00

On May 19, 1892, he paid on the school dupli-
cate for 1888, the sum of    .    .    .    .     200.00

On July 1, 1892, he paid to the school board, by
a borough order, the sum of    .    .  .    1,132.33

Which borough order was given to said J. W. Stambaugh,
because of overpayments which he had erroneously made to,
or which were erroneously applied to the borough of Sharon on
the borough duplicates of 1886, 1887, 1888, and was dated on
the 28th day of June, 1892.

"We do further find that said J. W. Stambaugh was the
collector of taxes for the borough of Sharon for the years 1886,
1887 and 1888, and, as such, he received for collection the tax
duplicates for state and county taxes for each of those years,
for borough taxes for each of those years and for school taxes
for each of those years; that he kept an account in the bank
of Alexander McDowell, of Sharon, Pa., in his name, as J. W.
Stambaugh; that he deposited to said account all collections
made on the various duplicates received by him, and that he
made payments by checks on said account, wherein he desig-
nated the duplicate to which the amounts for which those
checks were drawn should be applied; that the check given
Sept. 8, 1888, stated on its face that it was to be applied on
the tax duplicate for 1888; that one of the checks, to wit, the
$5,000 check, given Dec. 5, 1888, stated on its face that it was
to be applied to the tax duplicate of 1888; also one of the
$2,000 checks given on March 14, 1889, and the check of
Nov. 9, 1889, and the check of May 19, 1892, so stated on
their face, and the borough order of July 1, 1892, was to be
applied on the tax duplicate of 1888, and they were all so ap-
plied; but the remaining checks, to wit: one of Dec. 5, 1888,

for $1,000, stated on its face that it was to be applied on the tax duplicate of 1887, so, likewise, the one check for $2,000, dated March 14, 1889, and the check of June 1, for $0.57, all of which were accordingly applied on the tax duplicate of 1887.

" We do also find that Alexander McDowell was the treasurer of the school district and also of the borough of Sharon during the said period.

" Whereupon we, the said jury, do say that we are ignorant in point of law upon which side we ought, upon these facts, to find the issue, as between the plaintiff and the defendants, joined upon the bond given in evidence and recited hereinbefore in our verdict ; that if, upon the whole matter, the court shall be of opinion that the issue is proved for the plaintiff, then we find for the plaintiff and for the amount which said facts, and the law governing the same, would show the defendants' liability to be ; but if the court is of opinion that the law governing said facts is in favor of the defendants, then we do find for the defendants."

The following opinion was filed by MEHARD, P. J. :

" The first question to be considered is the effect upon defendants' bond of the fact that said J. W. Stambaugh failed to give bond, and to qualify as collector of taxes, on or before the fourth day of the term of the court of quarter sessions next ensuing his election.    It is contended, on behalf of defendants, that this fact rendered his office vacant, and that the bond thereafter given by Stambaugh and his sureties was void.    This position is based on the provision of the act creating said office, that, upon such failure by the collector elect, ' the said court shall declare his office vacant and appoint a suitable person, resident in the proper borough or township, to fill the same :' Act of June 25, 1885, P. L. 187.

" It is urged that the terms of this provision left to the court no discretion, but made it imperative to declare a vacancy and to fill it.    While we do not agree with this interpretation of the act, yet, if it be the true one, it does not follow that the office became ipso facto vacant upon Stambaugh's failure to qualify within the time prescribed, but only that the court neglected an imperative duty.    The wording of the act does not necessarily imply that the office would become vacant upon such failure, and unless it does the act should not be so inter-

preted.   The letter of the act makes the vacancy to occur when the court declares it ; and this we think its true meaning.   Moreover, the duplicate, upon which the balance against J. W. Stambaugh arises, was not delivered to him until after the bond in suit had been filed and approved.   The bond was executed for the purpose of enabling him to assume the duties of his office. In consequence, he entered upon those duties and collected the school duplicate for the year his term covered, as set forth in the verdict.   Hence neither he nor his securities can now deny that he was regularly qualified as such collector : Egbert v. Darr, 3 W. & S. 517 ; McClure v. Com., 80 Pa. 167 ; Cutler v. Dickinson, 8 Pick. 386 ; Bruce v. United States, 17 How. 437 ; Bigelow on Estoppel, 3d ed. 308 ; Hoboken v. Harrison, 30 N. J. L. 73 ; Seiple v. Elizabeth, 3 Dutch. 407.

" The next question is, whether the omission of the school directors to deliver to J. W. Stambaugh their warrant, with the tax duplicate of 1888, relieves the defendants from liability on their bond, for the balance owing the school district by Stambaugh, on said duplicate.

" In Hilbish v. Hower, 58 Pa. 94, decided in 1868, it was said : ' The authority of a collector of taxes to collect is his warrant. The duplicate is but a memorandum of the amount he is to collect from the parties therein named respectively.   Without a warrant the collector becomes a trespasser, as soon as he meddles with the property of a taxpayer.'

" This was said with reference to a school director who, in attempting to collect a county tax levied by the school board, had seized and sold personal property, under a warrant not issued by the proper authority.   The point of the decision was that the seizure was unlawful.   If the expression quoted meant only that a collector of taxes could not enforce payment by seizure of the property or person of the debtor, without a warrant, that is doubtless true as the law now stands.   But if it meant that one who had been appointed collector, who had qualified and had received the tax duplicate, from the proper source, for the purpose of collecting it, was not a collector de jure, so as to entitle him to demand and receive the taxes from the parties named in the duplicate, then that resulted from the acts of assembly in force at that time, and in that respect, we apprehend, the law has been changed by the act of June 25, 1885.

" In 1868 a collector of school taxes derived his authority from the school board. It might well be said that one did not become collector when so designated by the school board; for the board could change its mind and designate another at any time before its intention was executed by delivery of the duplicate and warrant. If the board, after appointing a collector, had refused to give him a warrant, he would have been without a remedy; for the mere appointment, or the appointment and giving of a bond, neither conducted him into the office nor gave him such a right to it as could be enforced by compelling a delivery of the duplicate and warrant.

" But the case is different under the act of 1885. Under that act the collector of taxes is not appointed by a municipal or quasi-municipal board; but he is elected to the office by the people of the district. His right to the office is perfect, and he becomes collector of taxes as soon as he gives bond approved by the court and takes the oath of office, if the time has arrived when his term is to commence. When so qualified, his right is a substantial one, which can be enforced by compelling a delivery to him of tax duplicate and warrant, after the first day of August following his election: See sec. 4, act 1885, P. L. 187.

" Such a one, then, being de jure collector, when lawfully possessed of the duplicate for collection, would, without a warrant, have authority to demand, receive and receipt for the taxes embraced in the duplicate, although he could not enforce his demand by a seizure of property or person. What he would so receive, he would receive by virtue of his office, and it would be covered by his bond.

" In Cannell v. Crawford County, 59 Pa. 196, the facts were as follows: The commissioners of Crawford county appointed one B. S. Burgess collector of county, state and other taxes for Titusville, in 1865, and issued to him the tax duplicate and warrant. Burgess did not give a bond, but nevertheless entered on the duties of his office, and he and his son under him collected thirty-eight hundred dollars of the taxes. After the appointment of Burgess, the commissioners appointed Charles Cannell collector of the same duplicate, and he gave bond with sureties. The bond recited that Cannell had received the duplicate and warrant; and the condition was that Cannell

should faithfully collect the said tax according to the require-
ments of the warrant, and, within six weeks from its date, pay
to the county treasurer all sums he should have received except
abatements and allowances, and within three months from his
corrected duplicate pay the treasurer the whole amount of taxes
charged in the duplicate, except such sums as he should be
exonerated from.

"In some way Cannell became possessed of the tax dupli-
cate, but the commissioners never issued to him their warrant.
The taxes collected by Burgess were not paid to the county,
and the question in the case was, whether Cannell's bond was
security therefor. The decision was that it was not. The
reasoning of the decision was: That the bond recited that a
warrant had been given to Cannell; that the recital was false;
that it was a material recital, for without a warrant Cannell
had no official authority to demand the taxes, or to enforce
their payment by seizure of person or property; that the du-
plicate and a warrant had been delivered to Burgess, and had
never been revoked; that by virtue thereof Burgess had col-
lected the taxes in question; and that it was immaterial that
Burgess had not given a bond, for the commissioners had the
power to appoint a collector without requiring a bond, under
act of Feb. 28, 1835, P. L. 45; 59 Pa. 202.

"In the case at bar, the bond contains no such recital. Its
condition is, 'that if the said J. W. Stambaugh shall and do
well and truly collect and pay over, or account for, according
to law, the whole amount of taxes charged and assessed in the
duplicate which shall be delivered to him, and faithfully dis-
charge the duties appertaining to the office of collector of taxes
according to law, then this obligation to be void.' The dupli-
cate for school taxes was delivered to Stambaugh as soon as
he had qualified to receive it, by giving bond and taking the
oath of office. The school board, through oversight, failed to
accompany the duplicate with their warrant. Mr. Stambaugh
did not, then or thereafter, ask for a warrant. Was it his duty
to do so? Under the law, as it was prior to 1885, neither a
collector nor his sureties were bound to see that a warrant was
given with the duplicate: Cannell v. Crawford County, 59 Pa.
202. The reason of this was that, as we have seen, prior to
the act of 1885, collectors derived their authority solely from

the board that appointed them, and did not become collectors de jure, until the duplicate and warrant were delivered to them. But, under the act of 1885, those elected become collectors de jure, as soon as they have qualified and the time arrives for their term to begin as fixed by law. Their office is conferred immediately by the people, and, when they have accepted it, the interests of the people, involved in a due and faithful collection of the taxes, are intrusted to them, and they are in duty bound to care for those interests. Hence it was as much the duty of Mr. Stambaugh to know the importance of a warrant and to demand it, as it was of the school board to issue one with the duplicate. We have seen that, without a warrant, he had authority to demand, receive and receipt for the taxes embraced in the duplicate given him for collection. If he proceeded to collect those taxes without a warrant and actually did collect them, so that the balance against him is for taxes received by him, we are unable to see how either he or his sureties can object that he had no warrant. If he had none, it was in part owing to his failure to demand one—a breach of his official duty. Neither does it appear that he was in any way hindered or delayed in collecting the taxes through lack of a warrant.

"This question was involved in Commonwealth v. Titman, 148 Pa. 168. It is contended on behalf of defendants that the decisive point in that case was the settlement made by the school board. We cannot so regard it. While it was held that the settlement was conclusive as to the amount Titman owed, it was not held that the settlement determined Titman's liability on his bond. The school board had no jurisdiction to determine that question, nor could auditors have done so : Com. v. Reitzel, 9 W. & S. 109. What was there decided was, that, where a judgment was entered against a collector and his sureties, on his collector's bond, for the unpaid balance on the duplicate given him for collection, the fact that no warrant was issued to the collector did not raise such an equity as would require the court to open the judgment. The case could not have been so decided if the delivery of a warrant be essential to the obligation of the bondsmen to make good such a balance. The refusal to open the judgment, if that were the law, would have been a clear abuse of discretion ; for its effect would have been

to make Titman's sureties liable for money they did not justly owe.   We therefore conclude that the lack of a warrant is not a valid defence in this case.

" It is further contended that the bond would be security for only so much as J. W. Stambaugh collected during his term of office.   It is true the bond covers only the official conduct of the collector, and the sureties would not be holden for a liability which attached subsequent to the expiration of his term : Com. v. West, 1 Rawle 29 ; Manufacturers' etc. S. & L. Co. v. O. F. Hall Association, 48 Pa. 446.

" But section fifth of the act of 1885 makes collectors under it subject to the same liabilities and penalties for neglect or violation of the duties of their office, as were collectors theretofore : P. L. 1885, p. 188.   One of those liabilities was, to be charged with the whole amount of the duplicate remaining unpaid and unexonerated, after three months from the time the collector received the corrected duplicate : Act 1834, § 49, P. L. 518 ; Purd. Dig. 1598.   That was a liability which attached during Stambaugh's term, and one which was covered by the express condition of his bond.

" Should the payments made by J. W. Stambaugh, on the school duplicate of 1887, after Aug. 28, 1888, be credited on the duplicate of 1888 ?

" Those payments were expressly appropriated by Stambaugh to the duplicate of 1887.   They were made by checks drawn on a general fund.   It is impossible to say that any of the money collected on the duplicate of 1888 was used in paying the balance owing on the duplicate of 1887.   Hence this question must be answered in the negative.

" And now it is considered, ordered and adjudged that judgment be awarded, on the facts found by the jury, in favor of the plaintiff, for the penalty in defendant's bond, to wit, sixty thousand dollars, and that damages be assessed against defendants and in favor of the School District of Sharon, in the sum of nineteen hundred and sixty-one dollars and forty-two cents, ($1,961.42,) and costs."

*Error assigned* was entry of judgment.

*A. W. Williams,* for appellants.—Defendants are not liable,

because Stambaugh did not qualify as collector within the time fixed by the act of June 25, 1885, P. L. 187, under which it is alleged he was elected.

The act certainly imposes a positive duty and does not confer merely a discretionary power.   The act creates the vacancy as a penalty for a failure to qualify within the time prescribed, and gives the court no discretion, no power to hear and determine by any form of procedure whether a vacancy exists or not, but simply to declare or make known what the law has cre ated : Kemmerer v. Foster Twp., 120 Pa. 153.

The failure to issue a warrant is a bar to a recovery against defendants : Stephens v. Wilkins, 6 Pa. 260 ; Chalker v. Ives, 55 Pa. 81 ; Hilbish v. Hower, 58 Pa. 93 ; Miller v. Stewart, 9 Wheat. 680 ; Cannell v. Crawford Co., 59 Pa. 196.

Conceding that § 49 of the act of 1834 applies to collectors of school taxes elected under the act of 1885, it is clear that § 48 of said act must also apply, and that the penalty imposed by § 49 can only result when the school board shall have performed its duty under § 48.

*S. H. Miller, Q. A. Gordon* and *J. P. Whitla,* not heard, for appellee.—Judicial action having never been taken to declare the office vacant, it is plain that no vacancy occurred in Stambaugh's office.   He was therefore to all intents and purposes a collector of taxes by election, at the time his bond was given and approved.

The sureties are liable on the official bond of one who is only a de facto collector of taxes : Twp. v. Wheeler, 90 Pa. 450 ; Twp. v. Couse, 156 Pa. 311 ; Com. v. Titman, 148 Pa. 168 ; Ellinger's Ap., 114 Pa. 505.

The measure of the sureties' liability is not the amount of the tax which Stambaugh might choose to collect within his term, but the whole amount of the duplicates which should be delivered to him.

The time allowed by law for Stambaugh to collect and pay over the whole amount of the taxes expired before his term of office expired.   But even if no definite time for collecting and paying over were fixed, the condition of the bond would fasten a liability, upon both the collector and his sureties, for the whole amount of the duplicate, regardless of what was collected within the term.

PER CURIAM, Oct. 22, 1894:

In this case a special verdict, embodying all the material facts, was rendered by the jury. On that the learned judge entered judgment in favor of the plaintiff. In doing so he fully considered and correctly disposed of all the questions presented by the facts established by the special verdict. In his opinion, sent up with the record, will be found all that can be profitably said on the questions involved; and on it we affirm the judgment.

Judgment affirmed.